**ALCOHOLIC BEVERAGES**

LIQUOR BOARDS – PUBLIC OFFICERS AND EMPLOYEES – COURTS AND JUDGES – DOMESTIC RELATIONS MASTER HOLDS "PUBLIC EMPLOYMENT" FOR PURPOSES OF EMPLOYMENT RESTRICTION APPLICABLE TO BALTIMORE CITY LIQUOR BOARD

October 10, 1995

*Mr. Aaron Stansbury*
*Executive Secretary*
*Board of Liquor License Commissioners*
 *for Baltimore City*

You have requested our opinion whether an individual who holds the position of a standing domestic relations master is eligible for employment by the Board of Liquor License Commissioners for Baltimore City (the "Board") as an appeals counsel. Under the relevant statute, an employee of the Board may hold no other "public office or employment."

This question is a difficult one, for the position of domestic relations master does not lend itself to easy categorization. Nevertheless, it is our opinion that the position of standing domestic relations master is best understood as a "public employment." Thus, a domestic relations master is not eligible for employment by the Board as appeals counsel.

**I**

**Dual Employment Prohibition**

The Board is charged with carrying out, within Baltimore City, the State's fundamental policy about alcoholic beverages: that their sale and distribution must be regulated and controlled. Article 2B, §1-101(a) of the Maryland Code. To carry out this policy, the Board may "employ a secretary and such inspectors, clerical and other assistants as may be necessary, and [may] fix the compensation of

3

such employees, except as otherwise provided by this article." Article 2B, §15-112(b).

The Board is seeking to fill the position of an appeals counsel. The Board is authorized to employ two appeals counsel. These individuals are salaried employees who receive biweekly compensation. Their function, as we understand it, is to represent the Board in the Circuit Court for Baltimore City on appeals taken from decisions of the Board.

Appeals counsel, like other Board employees, are subject to the dual employment prohibition in Article 2B, §15-112(e)(1). This paragraph provides, in pertinent part, that employees of the Board are not to "hold any other public office or employment, federal, State or local."

## II

### Position of Domestic Relations Master

Under Article IV, §9 of the Constitution, "[t]he Judge, or Judges of any court, may appoint such officers for their respective courts as may be found necessary." Reflecting this provision, §2-501(a) of the Courts and Judicial Proceedings ("CJ") Article, Maryland Code provides that "the judges of the circuit court for a county may employ the court administrators, assignment commissioners, auditors, *masters,* ... and other employees necessary to conduct the business of the court."[1] (Emphasis added.)

The applicant under consideration presently serves as a standing domestic relations master. *See* Maryland Rule 2-541. Masters play an important role in the effective functioning of the court system:

> [M]asters are appointed by a majority of
> the judges of the circuit court to perform
> certain duties. For example, a master is

---

[1] CJ §2-501(a) begins with an exception, "as provided for the Circuit Court for Baltimore City in Title 2, Subtitle 5A of this article." This exception refers to a merit system for employees of the clerk's office.

assigned to hear specific types of cases, including alimony pendente lite; support, custody, or visitation of children pendente lite; possession or use of the family home; and support of dependents. Rule 2-541(b) and Rule S73A. In addition, the court may "refer to a master any other matter or issue not triable of right before a jury."

76 *Opinions of the Attorney General* 81, 85 (1991). Masters serve at the pleasure of the appointing court and are officers of the court in which a referred matter is pending. Rule 2-541(a)(3). In carrying out their responsibilities, masters perform a variety of tasks short of actual adjudication:

Masters may conduct hearings, compel the attendance of witnesses, administer oaths, rule on the admissibility of evidence, examine witnesses, and make findings of fact and conclusions of law. Rule 2-541(c). Following a hearing, masters file proposed recommendations to the circuit court. Either party may file exceptions to those recommendations. Once exceptions are filed, or the time for filing has expired, the circuit court may hold a hearing or may decide exceptions without a hearing. The court then makes the final adjudication.

76 *Opinions of the Attorney General* at 85. A master is not paid a salary by the court; rather, the court prescribes the fees that may be charged by the master. Rule 2-541(a)(1).[2]

Masters are considered judicial appointees and are subject to the Code of Conduct for Judicial Appointees. Rule 1232. Pursuant to Canon 4 of the Code of Conduct for Judicial Appointees, a part-time judicial appointee, such as the standing domestic relations master in question, may practice law to the extent permitted by the

---

[2] For example, the Circuit Court for Baltimore City has recently authorized an increase in the examiners/masters' fees in uncontested divorce cases to $125, effective September 5, 1995.

appointing authority (in this instance, the Circuit Court for Baltimore City). Canon 4I(2).[3]

III

**Master Position As "Public Employment"**

Article 2B, §15-112(c) bars a Board employee from serving as a standing domestic relations master if that position is either a "public office" or "public employment."

On the one hand, we conclude that a standing domestic relations master does not hold a "public office." The position undoubtedly is an important one, created by rule. *See* Rule 2-541. Moreover, a master is protected by judicial immunity. *See Tucker v. Woolery*, 99 Md. App. 295, 637 A.2d 482, *cert. granted*, 335 Md. 225, *cert. dismissed as improvidently granted*, 336 Md. 280 (1994). Nevertheless, a master is not entrusted with any part of the judicial power under the Maryland Constitution. *See Matter of Anderson*, 272 Md. 85, 106, 321 A.2d 516 (1974). "The duties of the master are of an advisory character only." *Nnoli v. Nnoli*, 101 Md. App. 243, 261 n.5, 646 A.2d 1021 (1994) (internal quotation omitted). Indeed, a master's function has been termed "ministerial." *Matter of Anderson*, 272 Md. at 106. Thus, the position of a master has not been held to be a public office. *See Cohen v. Goldstein*, 58 Md. App. 699, 474 A.2d 229 (1984); 72 *Opinions of the Attorney General* 281, 284 (1987).

On the other hand, it is our conclusion that a standing domestic relations master does hold "public employment." We begin with the fact that masters are called "employees" by the very statute authorizing them to be appointed. *See* CJ §2-501(a). Although this labeling might not itself be dispositive, it accurately reflects application of the common law test for determining the existence of an employer-employee relationship. "That test inquires whether the employer has the right to control and direct the servant in the performance of his work and in the manner in which the work is to

---

[3] The Canons are set forth in Rule 1232. We are not aware of any guidelines issued by the Circuit Court for Baltimore City that reflect the extent to which part-time domestic relations masters are permitted to practice law. Nor are we aware of any opinions of the Committee on Judicial Ethics on point.

be done." *Brady v. Ralph Parsons Co.*, 308 Md. 486, 499, 520 A.2d 717 (1987).

The Court of Appeals has identified five "criteria to consult for guidance" in applying the "control" test. *Id.* "These include: (1) the power to select and hire the employee, (2) the payment of wages, (3) the power to discharge, (4) the power to control the employee's conduct, and (5) whether the work is part of the regular business of the employer." *Id.* All save the second of these criteria are met here: The court has the power to select and discharge the master and to control the master's work, and the master's work is an integral part of the regular business of the court system. As officers of the court, masters are subject to the supervisory powers of the County Administrative Judge. *See* Rule 1200d2. Given these facts, we do not think that a master can rightly be viewed as if he or she were an independent contractor.

The absence of compensation from the court system or the State is not decisive. To be sure, in one case the Court of Special Appeals did give considerable weight to the absence of State compensation in concluding that a master was not a "State employee":

> Masters in chancery ... were and still are appointed by the judges of the respective circuit courts .... They are not, and never have been, State employees. They are not paid by the State, and other than [certain pension benefits], they receive no direct benefits from the State. They are "at will" appointees of the circuit court and receive their compensation from either the fees they are permitted to charge or through the local government budget.

*Cohen v. Goldstein*, 58 Md. App. at 705. In context, however, this passage reflected the Court's determination that masters were not to be deemed State employees for pension purposes; the Court was not writing dicta about the employment status of masters in other contexts. Indeed, later in the same opinion, the Court referred to masters as "ministerial employees of the [circuit] court ...." 58 Md. App. at 715.

For purposes of construing §15-112, we find the different contexts in which the Court referred to "State employees" and "employees of the [circuit] court" to be significant. The Court used the former expression in the specific context of determining pension eligibility. It used the latter expression in a more general description of the nature of a master. It is the latter usage that has relevance to your inquiry regarding the meaning of the phrase "public ... employment" in §15-112.

Many cases recognize that an employment relationship can exist though the employer does not pay the employee. "[P]ayment of an individual by an entity [is not] the determinative factor in deciding whether that person is an employee of the entity. The determinative factor is the entity's ability to exert control over the individual." *Jacky W. v. New York City Bd. of Educ.*, 848 F. Supp. 358, 362 (E.D.N.Y. 1994) (summarizing federal common law, citation omitted). *Accord, General Accident Group v. Frintzilas*, 443 N.Y.S.2d 989, 992 (N.Y. Sup. Ct. 1981) ("The word 'employee' does not necessarily connote the payment of compensation ..."). Indeed, of special pertinence to the compensation arrangement for domestic relations masters is the fact that an individual can be the employee of an employer despite payment of the employee's compensation by a third party. *See Jones v. Goodson*, 121 F.2d 176, 179 (8th Cir. 1941) (citing numerous state cases); *Bogatsky v. Swerdlin*, 152 Md. 18, 26, 135 A. 416 (1926). Moreover, while the court does not pay the masters, it does set the amount of compensation that is payable and enforces payment. Rule 2-541(j).

The purpose of the "public ... employment" prohibition in Article 2B, §15-112(e) is evidently to ensure that Board employees – who, by virtue of their employment by the Board, unquestionably hold one "public ... employment" – not be perceived as having a set of potentially distracting employees' loyalties and obligations to a second governmental employer. In our view, the undeniably close relationship of a standing domestic relations master to the judicial branch of government would impair this goal if a master were able to serve as a Board employee.

Whether §15-112(e)'s wide-sweeping prohibition makes for good policy is surely debatable. The prohibition in §15-112(e) prevents the Board from considering many able people, including the master who has applied for the appeals counsel position. Perhaps

the Board will wish to ask the General Assembly for a relaxation of the prohibition.

## IV

## Conclusion

In summary, it is our opinion that a standing domestic relations master holds a "public ... employment" within the meaning of Article 2B, §15-112(e) and therefore is not eligible for employment by the Board.

J. Joseph Curran, Jr.
*Attorney General*

Jack Schwartz
*Chief Counsel*
*Opinions & Advice*

Gerald Langbaum
*Assistant Attorney General*

***Editor's Note:***

This opinion has been withdrawn. After the Office was provided with additional information and conducted further research, the Attorney General concluded that a part-time domestic relations master in the Circuit Court for Baltimore City does not hold "public office or employment." *See* 81 *Opinions of the Attorney General* 3 (1996)